## Louisville, N. A. & C. Ry. Co. v. David E. Stout.

1. NEGLIGENCE—*Appliances on Vestibule Cars.*—A mat extending across the ends of the platforms of connected vestibuled cars is not required as part of the proper equipment and supplies of a vestibule train.

2. ORDINARY CARE—*Want of the Exercise of.*—A passenger in a place of comparative safety, who, out of courtesy to a lady passenger, voluntarily abandons his position and unwittingly steps into a place of danger, is not in the exercise of that reasonable prudence and care for his own safety which the law requires.

**Trespass on the Case,** for personal injuries.   Appeal from the Superior Court of Cook County; the Hon. Phillip Stein, Judge, presiding. Heard in this court at the March term, 1896.   Reversed and remanded. Opinion filed June 29, 1896.

G. W. Kretzinger, attorney for appellant.

F. M. Ireland and Remy & Mann, attorneys for appellee.

Mr. Justice Shepard delivered the opinion of the Court.

This action was brought by appellee to recover for an injury received by him while a passenger on one of appellant's trains, and resulted in a verdict and judgment in his favor for five hundred dollars.

The train was commonly known as a " vestibule train," and consisted of sleeping coaches and day coaches connected with vestibule devices or attachments.

Appellee was standing on the station platform in the depot at Chicago talking with friends when the train started, and as the train was moving past him he stepped upon and into the sleeping coach, which was in the rear of the day coach in which he intended to ride.   Passing through the sleeper and across the platform connecting it with the car ahead, he opened the door of that car.   A lady passenger was following him, and at the moment of opening the door he observed her.   He then stepped back to permit her to pass into the car in advance of him, and as he did so his right foot and leg, up to his knee, went down into a space between the platforms of the two cars.

It appears that at that moment the train was moving on what is spoken of as a reverse curve in the track, which we may naturally understand would cause the cross-beams forming the ends of the car platforms to separate, or spread apart, on the sides of the platforms corresponding with the outer edge of the curve, and then, afterward, to approach and come together again as the curve in the track should diminish and cease, and it was into such opening that the appellee stepped.   Such opening is described as, and must

naturally have been, wedge-shaped, with the apex toward the direction of the inside of the curve, and as appellee's leg went down it was forced into this narrowing space so that he could not get out unaided.

A brakeman and other passengers gave him immediate assistance and extricated him from his perilous position before the curve was passed, but not without the injuries of which he complained, which, however, do not appear to have been of a permanent character.

The theory of appellee's declaration was that the cars of vestibuled trains should be so connected together, and have their platforms so guarded, that when properly equipped, and supplied with a proper mat upon the floors of said platforms and upon and across the ends of said platforms where the same come together, it would be safe for passengers to pass from one car to another while the train is in motion; and it was averred that it was the duty of the appellant "to have the platforms of the passenger cars comprised in said train properly equipped and supplied with a proper mat and covering upon the floors of said platforms and upon and across the ends of said platforms where the same come together, so as to make it safe for passengers upon said train to pass from one car to another car of said train while said train was in motion; yet the defendant, not regarding its duty in that behalf * * · * did not have the platforms of the passenger cars comprised in said train properly equipped and supplied with a proper mat and covering upon the floors of said platforms and upon and across the ends of said platforms where the same come together, so as to make it safe for passengers upon said train to pass from one car to another car of said train while said train was in motion."

And avers "that while he was so a passenger upon said train, and while he was, with all due care and diligence on his part for his own safety, passing from one car to another car of said train, his right foot and leg were accidentally and unwittingly and by reason of the absence of a proper mat and covering upon the floors of the platforms of said cars,

and upon and across the ends of said platforms where the same come together, thrust through the opening between the ends of the platforms, whereby his leg and foot were caught and crushed," etc.

There is no contention but that the train in question was a " vestibule train," but it is denied, and we think successfully, that a mat upon the floors of the platforms and upon and across the ends of the platforms where they come together has any connection with the vestibuling of a train, or that a mat enters into the construction or operation of the vestibule or of the train itself. Pullman Palace Car Co. v. Wagner Palace Car Co., 38 Fed. Rep. 416, where buffers and the vestibule attachment to trains are described.

The appellee entirely failed to show that a mat extending across the ends of the platforms of connected cars was any part of the proper equipment and supplies of a vestibule train, or of any other train.

Appellee, however, attempted to show that a mat so laid was a customary appliance, but his only witness in that regard fell far short of showing any such custom or general use among railways.

On the other hand the appellant showed that mats covering the platforms, but not extending over the ends of the platforms, were used commonly upon all vestibule trains, and it is not denied that such mats were on the platforms in question.

We can conceive that a narrow mat might extend with reasonable safety from one platform to another in the center line, or, so to speak, on the axis of the platforms, but it was not between the platforms at their center that appellee stepped.

A wide mat that should cover the opening throughout the entire width of the platforms would, it seems to us, be a source of danger in the swaying and swinging of a train when making a curve, instead of an appliance of safety.

But, however that may be, there was no proof that such a mat was a proper equipment of the train in question, or of any like train, and there was no sufficient proof that such

a mat was customary or in such general use among railways, as a measure of safety to their passengers, as required appellant to be supplied with one.

We can not see that there was any negligence to be imputed to appellant because of not having a mat such as it was alleged to be its duty to have.

Furthermore, the appellee was not exercising that reasonable prudence and care for his own safety which the law requires of one so situated.

He was upon the platform between cars of a moving passenger train, and having reached the door of the car he was about to enter, was in a place of comparative safety, when, actuated though he was by commendable courtesy to a lady traveler, he voluntarily abandoned his position of safety, and in the language of his declaration, "accidentally and unwittingly" stepped back into the open space between the platforms.

He did not testify that he looked before he stepped back, an act which the most ordinary prudence by one about to step backward on the platform between cars of a moving train would require to be first done. His only justification for not looking before he stepped back was that he did not notice any opening when he passed over.

The train appears to have been equipped with the most approved platforms, couplers and buffers, besides the vestibule attachment, and we do not think that because of an injury which the appellee might have avoided by the exercise of ordinary prudence, the appellant, being free from negligence on its part, should be made to suffer even to the extent of the small judgment in this case.

The trial court should have instructed the jury to find the appellant not guilty. We must, therefore, reverse the judgment and remand the cause.